UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE FLORES VELAZQUEZ,

               Petitioner,

   v.

JULIO HERNANDEZ, *et al.*,

               Respondents.

Case No. C26-1846-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Jose Flores Velazquez filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging an immigration judge's ("IJ") March 9, 2026, denial of bond based on the IJ's finding that Petitioner is a flight risk.  Dkt. 1, ¶¶ 1, 3.  His petition is accompanied by a sworn declaration from one of his immigration attorneys, Rachel Game. Dkt. 2 ("Game Decl.").  He seeks this Court's review of the IJ's denial, asserting that it was both an abuse of discretion and a violation of his due process rights under the Fifth Amendment. Dkt. 1, ¶¶ 38-48, 70-75.  Government Respondents filed a timely return in response (Dkt. 6), along with an unsworn declaration from their counsel, Barbara Andrade (Dkt. 7) ("Andrade Decl."), and a sworn declaration from U.S. Department of Homeland Security Deportation

Officer Gennadiy Baz (Dkt. 8) ("Baz Decl."). Petitioner filed a timely traverse in reply. Dkt. 10.

Having reviewed the parties' submissions and the governing law, the Court GRANTS the petition (Dkt. 1) in part for the reasons set forth below.

## I.    BACKGROUND

Petitioner Jose Flores Velazquez is a native and citizen of Mexico, who first entered the United States in 1991. Dkt. 1, ¶ 22. He last entered the United States on or around April 7, 1997. *Id.*; Baz Decl., ¶ 3.

Prior to his detention, Petitioner lived with his family in Oregon. Dkt. 1, ¶ 1. He has three U.S. citizen children, one of whom suffers from "significant health issues and developmental delays that require constant support[.]" *Id.* ¶¶ 22-23. He has two siblings and a grandmother who are lawful permanent residents and extended family members who are U.S. citizens. *Id.* ¶ 22. He has no criminal history. *See* Dkt. 1-3 at 4.

On December 22, 2025, ICE arrested Petitioner in Canby, Oregon during "targeted immigration enforcement operations." Andrade Decl., ¶ 2, Ex. B at 2; Dkt. 1, ¶ 24; Baz Decl., ¶ 4. DHS served Petitioner with a Notice to Appear ("NTA") and initiated removal proceedings under the Immigration and Nationality Act ("INA") in the Tacoma, Washington immigration court. Baz Decl., ¶ 4.

As will become relevant later in this Order, during a January 21, 2026, immigration hearing, Petitioner initially denied, through his prior counsel, some of the allegations related to the manner of his entry into the United States.[1] Dkt. 1, ¶ 25; *see* Dkt. 1-3 at 10, ¶¶ 4-7. On January 25, 2026, Petitioner's prior attorney learned those denials were inaccurate, *see* Dkt. 1-3

---

[1] Petitioner did not provide transcripts from the January 21, 2026, immigration hearing, so the specific information communicated to the immigration judge is not before this Court.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

at 12, ¶ 14, and on January 27, 2026, Petitioner "agreed to correct the record." *Id.* ¶ 16. Apparently, this led to Petitioner's prior attorney filing a motion on January 28, 2026, to both correct the inaccurate information communicated on January 21, 2026, and to withdraw as counsel (based on a purported conflict of interest surrounding the inaccurate information). *See generally* Dkt. 1-3 at 9-13 (outlining Petitioner's prior attorney's steps taken once she learned of the inaccurate information conveyed to the immigration court). The motion to withdraw was filed and subsequently granted on February 12, 2026. Game Decl., ¶ 10. In this petition, Petitioner and his current immigration counsel provide additional information regarding the inaccurate information and contend it was due to a miscommunication between him and his prior attorney while utilizing a telephonic Spanish interpreter. *See* Dkt. 1, ¶ 25 n.1; Game Decl., ¶¶ 7-11. The motion to withdraw filed by Petitioner's prior attorney is relevant here because it was both filed by DHS in support of denying Petitioner's subsequent bond request, *see* Dkt. 1-3 at 3, and relied upon by the IJ in finding a flight risk, *see* Andrade Decl., ¶ 4, Ex. D at 2. *See infra*, Part C.

On February 19, 2026, Petitioner and six other noncitizens filed a petition for a writ of habeas corpus in this Court, challenging their detention under the INA as unlawful. *See Flores-Velazquez v. Hermosillo*, C26-00600-TMC, 2026 WL 523283, at *1 (W.D. Wash. Feb. 25, 2026). On February 25, 2026, the Honorable Tiffany Cartwright granted the petition in part and ordered the immigration court to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at *2.

On March 9, 2026, the immigration court held the bond hearing ordered by Judge Cartwright. To support his request for bond, Petitioner submitted a written motion (Dkt. 1-2 at 4-7), along with additional supporting evidence, which included: the birth certificates for his

U.S. citizen children (*id.* at 7-9), letters of support from family and others connected to Petitioner (*id.* at 10-28), his residential lease agreement (*id.* at 29-33), medical records showing his dependent son's medical diagnoses (*id.* at 34-44), school records for his dependent son (*id.* at 45-58), individualized education plan records for his daughter (*id.* at 59-62), federal tax documents (*id.* at 63-64), and vehicle registration documents (*id.* at 65). Respondents, in turn, submitted a Form I-213 (Record of Deportable/Inadmissible Alien) and the earlier-mentioned Motion to Withdraw filed by Petitioner's prior attorney, purportedly evidencing Petitioner's lack of candor. Dkt. 1-3 ("Ex. B") at 3 (DHS Notice of Evidence); *see id.* at 4-6 (DHS I-213), 7-13 (Motion to Withdraw).

At the conclusion of the bond hearing, the IJ denied bond and issued a checkbox order finding Petitioner to be a flight risk and denying conditional release. *See* Andrade Decl., ¶ 3, Ex. C at 1. The box indicates that the IJ considered Petitioner's ability to pay a bond. *Id.* Although there were no written findings or analysis in the checkbox order, *see id.*, Deportation Officer Baz declares that at the hearing the IJ "found that Petitioner's limited opportunities for relief from removal, his use of false identities, and his previous false testimony made him a poor bail risk and denied bond[,]" Baz Decl., ¶ 6.[2]

Petitioner filed an appeal challenging the IJ's bond denial to the Board of Immigration Appeals ("BIA") on April 7, 2026, which remains pending. *Id*.

On April 27, 2026, Petitioner attended a separate immigration merits hearing, at which a different IJ denied Petitioner's applications for relief from removal and ordered Petitioner

---

[2] Deportation Officer Baz asserts their declaration is "based on my review of [DHS] systems and records, and on my familiarity with the case of [Petitioner]." Baz Decl., ¶ 2. The parties did not provide transcripts or audio recordings of the March 9, 2026, bond hearing, so it is unclear whether and, if so, what oral findings were made. The record is similarly unclear as to whether and, if so, how Officer Baz has personal knowledge of the March 9, 2026, bond hearing other than from a later review of the IJ's bond memorandum issued on May 1, 2026.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

removed to Mexico. *Id.* ¶ 7. Petitioner appealed that order to the BIA on May 6, 2026, and his appeal remains pending. *Id.*

On April 30, 2026, the IJ issued a written memorandum outlining his findings and reasoning for denying bond. *See* Andrade Decl., ¶ 4, Ex. D. The memo outlines the procedural history leading up to the hearing, discusses BIA and Ninth Circuit case law, acknowledges the evidence submitted by the parties for the hearing, discusses Petitioner's immigration history and ties to the United States, and ultimately finds Petitioner to be "a very poor bail risk." *Id.* It does not acknowledge Petitioner's lack of criminal history. *See generally id.*

The IJ's memorandum identifies three reasons for finding Petitioner to be a very poor bail risk. *Id.* at 3. First, the IJ points to Petitioner's "limited opportunities for relief from removal", finding that "he has lived in the Unites illegally [for] 27 years but has yet to file an asylum application." *Id.* Further, the IJ asserts that "[Petitioner] may seek cancellation of removal, but his only qualifying relatives (his 20- and 19-year-old children) are in good health." *Id.* Second, the IJ asserts that "[Petitioner] has been using a false [S]ocial [S]ecurity number to work in the United States." *Id.* Finally, the IJ states that Petitioner "was not honest with the court in his removal proceedings regarding his manner of entry into the United States." *Id.* Accordingly, the IJ "[did] not find that [Petitioner] has shown that he is not a flight risk." *Id.* The IJ further found that no amount of bail or condition of parole would be sufficient to mitigate the risk of flight. *Id.*

Petitioner filed the instant petition on May 28, 2026, challenging the adequacy of the bond hearing, asserting the IJ's decision violates the INA and the Due Process Clause. *See generally* Dkt. 1.

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

## II.   LEGAL STANDARDS

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  Habeas petitioners must prove by the preponderance of the evidence that they are entitled to habeas relief.  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citation omitted).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require."  28 U.S.C. § 2243.

## III.   DISCUSSION

Petitioner raises two claims related to the IJ's bond denial.  First, he alleges that his continued detention under 8 U.S.C. § 1226(a) is unlawful because the IJ failed to consider the required factors when determining whether he posed a flight risk and that the factors that *were* considered did not "overcome the significant positive equities and evidence of community ties[.]"  Dkt. 1, ¶ 67.  He asserts that "no reasonable adjudicator could conclude that Petitioner is a flight risk based on the record before the IJ."  *Id.*  Second, Petitioner asserts that because his detention does not "bear a reasonable relation to either preventing flight risk or danger to the community," it violates the Due Process Clause of the Fifth Amendment.  *Id.* ¶¶ 73-75.

Petitioner also asserts that he should not be required to exhaust his appeal pending before the BIA before seeking habeas relief here, *see id.* ¶¶ 49-57, or alternatively, that any requirement should be waived "because of the inadequacy of the administrative appeal process and the irreparable harm resulting from agency delay."  *Id.* ¶ 58.  Respondents argue that the Court should require Petitioner to exhaust his administrative remedy before the BIA and that, to the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

extent this Court has jurisdiction over his claims, it should find that Petitioner has not demonstrated that the IJ's decision constitutes an abuse of discretion or violates due process. Dkt. 6 at 2, 4-6.

### A.      The Court has subject-matter jurisdiction to review the IJ's bond denial.

Respondents acknowledge that federal district courts have habeas jurisdiction over constitutional claims or questions of law and that, in the context of a challenge to an IJ's bond determination, the federal court's review is for an abuse of discretion.  Dkt. 6 at 9.  As it relates to Petitioner's claim, however, Respondents appear to suggest this Court lacks subject-matter jurisdiction under 8 U.S.C. § 1226(e).  *See id.* at 2 (citing 8 U.S.C. § 1226(e)) ("[Petitioner] seeks to bypass [his appeal before the BIA], expressly designed to correct any alleged factual or legal errors in the IJ's bond determination, inviting this Court to improperly substitute its judgment for the IJ's.").

To the extent Respondents contend that § 1226(e) bars review, the Court disagrees.  Despite generally lacking subject-matter jurisdiction to review discretionary bond decisions, *see* 8 U.S.C. § 1226(e), that provision does not "preclude habeas jurisdiction over constitutional claims or questions of law."  *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (citation modified).  A bond denial due to community danger or flight risk is a mixed question of law and fact, subject to judicial review by federal courts under an abuse of discretion standard.  *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

Here, Petitioner is challenging the IJ's discretionary bond denial on the basis of a perceived flight risk as legally erroneous and unconstitutional.  Dkt. 1 at 20-21.  Accordingly, this Court has subject matter jurisdiction to review that denial.  *See Kharis v. Sessions*, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

**B.**      **The Court waives the prudential exhaustion requirement.**

The exhaustion of administrative remedies in habeas claims is a prudential, rather than jurisdictional, requirement. *See Hernandez*, 872 F.3d at 988 (internal citations omitted). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record; (2) waiving the requirement would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id.* (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion. *Id.* However, even if these "*Puga*" factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these "*Laing*" factors applies." *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

As to the first *Puga* factor, Respondents contend it weighs in favor of exhaustion "because the BIA has subject-matter expertise for individual immigration bond decisions, even if the BIA's review of the bond denial would not reach the specific constitutional claim raised in this case." Dkt. 6 at 5 (citing *Zuo v. Hermosillo*, 2026 WL 809882, at *1 (W.D. Wash. Mar. 24, 2026)). In *Zuo*, the district court noted that "[t]he IJ found [Zuo] was a flight risk and a danger to the community but provided no basis for the finding." *Id.* Thus, to avoid "speculat[ing] as to

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

the IJ's reasoning," the court found that further factual development in the immigration court was proper. *Id.* (noting that the IJ would prepare a written decision if appealed). Here, the IJ's basis *is* clear and articulated in a written memorandum—Petitioner's claim is that the process itself was legally erroneous and constitutionally deficient. The issue then is whether, as a matter of law, the evidence presented at the bond hearing could establish that Petitioner posed a flight risk. Thus, a further administrative record is not necessary to decide Petitioner's purely legal claims. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011); *W.T.M. v. Bondi*, No. C25-2428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Scott v. Wamsley*, No. C25-1819-TMC, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026)). The first *Puga* factor weighs in favor of not requiring exhaustion.

The second *Puga* factor is neutral. Respondents assert that, because "Petitioner challenges a fact-specific bond determination," this case does not involve a "discrete legal question, the resolution of which may provide concrete guidance for future administrative proceedings." Respondents further assert that "the recent surge of § 1226(a) bond hearing challenges filed in this Court over the past month demonstrates that allowing further relaxation of the exhaustion requirement would continue to encourage other detainees to directly appeal their bond determinations to federal district court." *Id.*

This case *does* involve a discrete legal question; namely, whether the IJ correctly applied the law to a given set of facts. So, while this case may provide some guidance for future administrative proceedings, *see W.T.M.*, 2026 WL 262583, at *2, the Court also recognizes that resolving Petitioner's individual case is less likely to "provide concrete guidance for a large swath of future administrative proceedings." *Martinez v. Scott*, 2025 WL 2689844, at *5 (W.D.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025).

As to Respondents' second point, while forgoing exhaustion may initially encourage some habeas petitioners to bypass administrative review, "once the questions presented here are decided, they 'should cease to arise.'"  *Hernandez*, 872 F.3d at 989 (quoting *Singh* , 638 F.3d at 1203 n.3).  In addition, petitioners are always constrained by the requirement that their claims allege colorable constitutional or legal challenges, which further mitigates the concern asserted by Respondents.

As to the third factor, where, as here, the alleged defects are constitutional in nature, the Court finds no reason to delay review in favor of a BIA appeal.  *Soriano v. Hernandez*, No. C26-0900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026).  This is particularly true if, as Respondents assert, the "BIA's review of the bond denial decision would not reach the specific constitutional claim raised in this case."  Dkt. 6 at 5.

Separate from the *Puga* factors, which already weigh against requiring exhaustion, the Court exercises its discretion in waiving the requirement based on the individualized harm that would result to Petitioner if he were required to exhaust his appeal before seeking relief in federal court.

Respondents contend that Petitioner has not demonstrated sufficient irreparable harm unique to him because "the mere passage of time or the delay inherent in the administrative process" is insufficient.  Dkt. 6 at 7.  However, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "[S]eparated families . . . are substantial injuries and even irreparable harms."  *Washington v. Trump*, 847 F.3d

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

1151, 1169 (9th Cir. 2017). The record shows that, prior to his detention, Petitioner financially and emotionally supported his family, including his adult child who has special needs, relies on Petitioner for transportation, and is experiencing trauma from the loss of Petitioner's support. *See* Dkt. 1-2 at 11 (letter from Petitioner's other son documenting his disabled brother's reliance on Petitioner), 12 (letter from Petitioner's daughter documenting "immediate financial instability" caused by Petitioner's detention, 13 (letter from Petitioner's disabled son), 16 (letter documenting "emotional and economic strain" suffered by the family due to separation), 18 (letter documenting "immediate financial instability and significant emotional strain" for Petitioner's family); *see also Soriano*, 2026 WL 969764, at *4 (acknowledging petitioner "ha[d] dependents who rely upon him financially and emotionally, and that relationship [was] severely negatively impacted by his continued detention"). Under these circumstances, the Court finds Petitioner will suffer irreparable injury if he is required to wait for the BIA's decision before being permitted to seek habeas relief. The Court therefore exercises its discretion to waive prudential exhaustion.

### C.    The IJ's denial was an abuse of discretion.

As noted, the Court reviews IJs' bond determinations for an abuse of discretion. *See Martinez*, 124 F.4th at 779-80. Specifically, while factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). That is, while the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides[,]" it may

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782-84 (quoting *Wilkinson*, 601 U.S. at 225).

The parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1226(a).  Dkts. 1 at 9-10, 6 at 1.  In making a bond decision under § 1226(a), IJ must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk."  *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)).  An immigration judge may also consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States.  *See id.*

Here, the IJ's findings and analysis contained in his written memorandum states, in relevant part:

> Respondent filed evidence in support of his request for bond. This evidence included (1) copy of the federal judge's habeas order; (2) Respondent's children's [*sic*] birth records; (3) letters of support from friends and family; (4) Respondent's residential lease; (5) medical and educational records regarding Respondent 24-year-old disabled son; (6) Respondent's tax records; and (7) Respondent's vehicle registration.

> DHS also filed evidence in support of its position in the bond proceedings. This evidence included the Record of Inadmissible/Deportable Alien, Form I-213; and . . . evidence that Respondent previously provided false evidence to the court about his manner of  entry into the United States.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

At his bond hearing, Respondent, through counsel, proffered that Respondent last entered the United States without inspection in 1997. Respondent is married, but his wife has no lawful immigration status. He has three United States citizen children, aged 24, 20, and 19. Respondent's 24-year-old son has a development delay and receives Social Security disability benefits. Respondent's other 2 children are in good health. Respondent has a brother, sister, and grandmother who are lawful permanent residents. Respondent does not have work authorization and uses a false social security number to work in the United States. If released, Respondent would live in Wilsonville, Oregon, with his family. Although Respondent has been living in the United States for 27 years, he fears return to Mexico and plans to file an asylum application. He also intends to file an application for cancellation of removal as a non-permanent resident.

Respondent has equities in the United States, including his spouse and United States citizen children. Respondent has a work history and community ties. He also has some extended family with status in the United States.

Respondent has limited opportunities for relief from removal. He has lived in the United States illegally or 27 years but has yet to file an asylum application. Respondent may seek cancellation of removal, but his only qualifying relatives (his 20- and 19-year-old children) are in good health. Respondent has been using a false social security number to work in the United States, and he was not honest with the court in his removal proceedings regarding his manner of entry into the United States.

Given Respondent's limited opportunities for relief from removal, his use of false identities, and his previous lack of candor to this court, the court finds that Respondent is a very poor bail risk.

Andrade Decl., ¶ 4, Ex. D at 4-5 (citations omitted).

The IJ relied on three bases to find Petitioner a flight risk without explaining how those factors established flight risk or how they outweighed the other relevant *Guerra* factors. Petitioner argues that the IJ's analysis "bears little resemblance to the factors and caselaw on flight risk." Dkt. 10 at 7. Respondents do not substantively address two of the three bases upon which the IJ found Petitioner to be a flight risk. *See generally* Dkt. 6. Instead, Respondents focus on the alleged misrepresentation Petitioner made in earlier immigration proceedings and suggest that "credibility standards applicable to asylum are relevant insofar as the IJ's conclusion

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

that Petitioner's lack of candor to the Court weighed against granting his bond request."[3]  *Id*. at 9.  Respondents argue that "the IJ carefully weighed the evidence and reasonably found that Petitioner failed to meet his burden[.]"  *Id.* at 11.

### 1.  *Limited opportunity for immigration-related relief*

As for the first basis, the Court initially observes that the "limited opportunities for relief from removal" were not fully apparent to the immigration court at the March 9, 2026, bond hearing because Petitioner's application for cancellation of removal was not adjudicated until April 27, 2026, seven weeks *after* the bond hearing, but before he issued his written memorandum.  *See* Baz Decl., ¶¶ 6-7.  The IJ notes this fact in a footnote contained in his written memorandum, *see* Andrade Decl., ¶ 4, Ex. D at 3, but his memorandum does not explain what evidence he considered or how he was otherwise positioned to make that judgment during the bond hearing itself.  To the extent the IJ's decision was based on evidence not available at the time of the bond hearing, his reliance on ex post facto evidence to justify bond denial is a "clear red flag that something is amiss with the IJ's analysis."  *See Cruz-Acevedo v. Scott*, 2026 WL 1623154, at *7 (W.D. Wash. June 5, 2026) (citation modified).

Moreover, the IJ provided no rational connection between Petitioner's limited immigration relief and his purported flight risk.  *See Soriano*, 2026 WL 969764, at *6 ("The IJ identified Petitioner 'has equities in the United States' but then concluded without explanation that Petitioner's challenges in establishing relief automatically supported finding Petitioner a 'very poor bail risk.'").  While the BIA has identified that an IJ may "consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond," *see Matter of R-A-V-P-*, 27 I & N Dec. 803, 805 (BIA 2020), the mere fact of a removal order or the lack of

---

[3] Because it is unnecessary for this decision, the Court does not reach Respondents' arguments regarding immigration-related credibility standards.  *See* Dkt. 6 at 9-11.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

other potential forms of relief do not suffice to establish flight risk, *see, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *7 (W.D. Wash. June 1, 2026); *Tavurov v. Noem*, No. C26-0668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) ("[T]he fact of a removal order is not sufficient by itself to deny bond" or establish flight risk); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the fact that a noncitizen has unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone").

Here, the IJ notes several *Guerra* factors that weigh against a flight risk finding (e.g., that he has lived in the United States for approximately twenty-seven years, that he has dependent family members in the United States, and that he has "work history and community ties"), *see* Andrade Decl., ¶ 4, Ex. D at 3, but fails to provide any explanation as to why Petitioner's limited immigration relief outweigh those *Guerra* factors or why his limited relief otherwise demonstrates that he is a flight risk.  Like the court in *Cruz-Acevedo*, this Court is "left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors," and ultimately, must conclude that he "failed to do so."  2026 WL 1623154, at *8 (citing *Vasquez Lopez v. Hernandez*, 2026 WL 984151, at *3 (W.D. Wash. April 13, 2026)).

*2.    Use of a false Social Security number to work in the United States*

As to the second basis, the IJ's written memorandum similarly fails to make any connection between Petitioner's use of a false Social Security number to maintain employment and his risk of flight.  Instead, the IJ notes that "Respondent has been using a false [S]ocial [S]ecurity number to work in the United States," which he then later characterizes as the "use of false identities."  Andrade Decl., ¶ 4, Ex. D at 3.

This finding is in tension with the IJ's own reasoning because the IJ also notes Petitioner's employment history as one of his "equities in the Unites States" that weighs against denying bond. *See id.* It is also in tension with BIA caselaw, because "a noncitizen without any employment history is a factor that militates against release on bond because it would indicate the noncitizen is less likely to appear for removal proceedings." *Soriano*, 2026 WL 969764, at *5 (citing *R-A-V-P-*, 27 I & N. Dec. at 805).

Notably, Petitioner filed his 2024 federal tax return (which contains the false Social Security number) in advance of his bond hearing, *see* Andrade Decl., ¶ 4, Ex. D at 2, suggesting that he was not trying to mislead the court or otherwise conceal the use of a false Social Security number. On the current record, the only apparent reason for Petitioner's use of the false Social Security number was to maintain employment—an explicit factor under *Guerra* that weighs against the finding made by the IJ here. The IJ's memorandum does not acknowledge this tension or explain why Petitioner's use of a false Social Security number outweighs the employment (or federal tax payments) facilitated by it. Further, the fact that the IJ characterizes Petitioner's use of a false Social Security number as "us[ing] false identities" appears to be an attempt to reframe the conduct into something more culpable than the purpose for which it was used (such as, for example, inferring that Petitioner may flee vis-à-vis the use of "false identities"). On the current record, however, such an inference would be unreasonable. It was not a logical conclusion to find Petitioner a flight risk based solely on the admitted use of a false Social Security number for the purpose of maintaining employment and the IJ abused his discretion in doing so.

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16

### 3.    *Purported lack of candor to the court*

Turning to the third basis for denying bond, the Court also finds, as a matter of law, that no reasonable jurist could draw a rational connection between the purportedly false information communicated by Petitioner's prior attorney during the January 21, 2026, immigration hearing with Petitioner's risk of absconding or fleeing.

The IJ found that Petitioner "was not honest with the court in his removal proceedings regarding the manner of entry into the United States." Andrade Decl., ¶ 4, Ex. D at 3. As discussed above, the parties dispute the nature of the statement and whether it was an intentional lie. Respondents argue that "an admitted false statement made to an IJ is a serious adverse discretionary factor that weighs heavily against a favorable bond determination." Dkt. 6 at 10 (citing *Singh*, 643 F.3d at 1180-81). Petitioner disputes the characterization of the statement, asserts it was a miscommunication caused by the use of a Spanish interpreter, and points out that he agreed to amend the record only four days later. Dkt. 1, ¶ 46; *see also* Dkt. 10 at 10.

Petitioner also included a declaration from Rachel Game, who represents Petitioner in both his bond denial appeal and appeal of the denial of his application for relief. Game Decl., ¶ 3. The purpose of this declaration appears to be for providing additional context, as it describes Game's communications with Petitioner about the alleged false statements and explains Petitioner's belief that his prior attorney misunderstood his statements, which were relayed using a telephonic Spanish interpreter. *Id.* ¶¶ 10-11.

All of this is to say, it is obvious that the parties here disagree on whether Petitioner's prior statement to his attorney was dishonest or whether it was a product of both a language barrier and a miscommunication involving a Spanish interpreter. Resolving this ancillary factual

dispute is not necessary here, however, because the IJ's memorandum lacked any rationale connecting the purported "lack of candor" to a risk of flight.

The Court begins by acknowledging that it is not within this Court's province to determine or reassess Petitioner's credibility or to make any factual findings regarding the veracity of any prior statements made to Petitioner's attorney. It is, on the other hand, this Court's charge to review and decide whether the IJ correctly applied to the law to a given set of facts. *Martinez*, 124 F.4th at 785. In answering that question, the Court identifies what information was before the IJ, whether the record demonstrates that such relevant information was considered, and whether there is a "reasonable foundation" between the fact at issue and the IJ's finding that it supported a flight risk determination. *See Guerra*, 24 I. & N. Dec. at 39.

Assuming, for the sake of this Court's role, that Petitioner's statement regarding his manner of entry communicated through his attorney at the January 21, 2026, hearing *was* false, the IJ's written memorandum still fails to draw a reasonable connection to Petitioner's individual risk of flight, in light of his numerous ties to the United States—which again, includes a fixed and stable residence, consistent employment, a dependent family that includes three U.S. citizen children (one of whom suffers from medical and developmental health issues), and U.S. citizen extended family members. And the IJ's summary conclusion that Petitioner's lack of candor demonstrates his flight risk fails to acknowledge these equities, weigh them against his purported lack of candor, and explain why they are ultimately outweighed by this singular, disputed untruth communicated to the court not by Petitioner, but by his prior attorney.

In sum, the IJ's bond denial does not rationally apply the governing legal standard to the facts and evidence here. The cited reasons for denying bond do not stand on their own (or in the aggregate) and it does not appear the IJ considered, or engaged with, the significant amount of

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 18

evidence in Petitioner's favor. And again, there is no evidence that the IJ acknowledged or considered Petitioner's lack of criminal history. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to consider and address in its entirety the evidence submitted by petitioner") (internal citation omitted). Simply acknowledging contrary evidence is not enough; the IJ must meaningfully engage with it. *See, e.g., Miri v. Bondi*, 2026 WL 622302, at *8–9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion).

The record demonstrates Petitioner's stable and consistent connection to the United States dates back to 1997. Prior to his detention, he provided financial and emotional support to his family, including his wife, children, mother, and grandmother. This record, which was before the IJ during the bond hearing, contradicts the IJ's finding of flight risk. To find Petitioner to be a flight risk under these circumstances would be to necessarily conclude that he would effectively leave these numerous connections (which again, includes a developmentally disabled child who relies on Petitioner for hands-on caregiving, *see* Dkt. 1-2 at 11) to avoid attending future immigration hearings. Thus, even if the IJ meaningfully engaged with the relevant evidence and factors (which the Court finds he did not), no reasonable adjudicator could conclude on this record that Petitioner would so leave. Accordingly, the IJ's decision in finding Petitioner a flight risk was an abuse of discretion and Petitioner's continued detention violates due process.

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 19

**D.     Release is the appropriate remedy.**

Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005).  This jurisdiction has found no basis for similarly situated petitioners to continue to be detained.  *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Soriano*, 2026 WL 969764, at *6 (same); *Vasquez Lopez*, 2026 WL 984151, at * 3 (same); *W.T.M.*, 2026 WL 262583, at *5 (same).  The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

**E.     Petitioner's request for "ancillary" relief is denied.**

Petitioner also asks this Court to (1) prohibit Respondents from imposing an ankle or wrist monitor condition if he is released, (2) order the return of his personal property held by Respondents, and (3) order the IJ who denied bond to read this Order and affirm in writing that he has done so.  Dkt. 1 at 22.  The petition does not develop a relevant factual record or identify relevant legal authority.  In his reply, Petitioner clarifies that such requested relief is not injunctive, but rather "ancillary" and part of this Court's broad power in fashioning appropriate habeas relief.  Dkt. 10 at 13 (citations omitted).

The habeas writ's core focus is on the lawfulness of the individual's physical custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 485-86 (1973).  While it may ultimately have the authority to order the requested relief, the Court expects parties to develop a relevant factual record and provide the legal authority supporting the request.  Absent that support, the Court denies Petitioner's requests here.

## IV.     CONCLUSION

For the foregoing reasons, the Court ORDERS:

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 20

(1)    Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part.

(2)    Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3)    Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

(4)    Petitioner's remaining requests for relief are DENIED without prejudice.

(5)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 24th day of June, 2026.


_S. Kate Vaughan_

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 21